UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                    :

DUFF & PHELPS, LLC,                      :

                         Plaintiff,        :

                                      :           13 Civ. 3242 (PAE)

              -v-                  :

                                      :           <u>OPINION & ORDER</u>

VITRO S.A.B. DE C.V.,                 :

                                      :

                      Defendant.      :

                                      :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Duff & Phelps, LLC ("Duff & Phelps"), as successor-in-interest to Chanin

Capital Partners, LLC ("Chanin"), brings this action against Vitro S.A.B. de C.V. ("Vitro"), a

glass manufacturer based in Mexico.  Duff & Phelps asserts claims for breach of contract and

unjust enrichment arising from Vitro's refusal to pay Chanin a $3.25 million "Restructuring

Fee," which, according to Chanin, was triggered, under a contract between the two, by Vitro's

settlement with its noteholders, entered on March 14, 2013.

       Vitro now moves to dismiss for lack of subject matter jurisdiction, pursuant to Federal

Rule of Civil Procedure 12(b)(1).  According to Vitro, the contract between Vitro and Chanin,

which provided for a Restructuring Fee, was discharged during Vitro's Mexican bankruptcy

proceeding.  Accordingly, Vitro claims that the Court, under the doctrine of international comity,

should abstain from re-litigating Chanin's claim for a Restructuring Fee.

       For the reasons that follow, Vitro's Rule 12(b)(1) motion is denied.  However, in the

interest of international comity, the Court will stay discovery in this case for three months.

During this time, Vitro may seek to obtain clear proof, which is lacking on the current record,

that the Mexican District Court's intent, in adjudicating Vitro's bankruptcy, was to discharge

Chanin's claim to a Restructuring Fee.  Vitro is directed to submit any such evidence to the Court by April 22, 2014.  Absent proof of such discharge, the parties will, at that time, proceed to discovery.

Separately, Vitro moves to dismiss Duff & Phelps' claim for unjust enrichment under Rule 12(b)(6).  For the reasons given below, that motion is also denied.

## I.    Background[1]

### A.    Vitro's Efforts to Restructure Its Debt

Vitro is the parent corporation for a large glass manufacturing enterprise based in Mexico.  Compl. ¶ 7; Santos Decl. ¶ 3.  In early 2009, Vitro announced that it would restructure substantially all of its debt, which, at that time, totaled approximately $3.7 billion.  Santos Decl. ¶¶ 4–5.  This amount included $1.216 billion in outstanding principal for notes issued under

---

[1] The facts are drawn in large part from the Complaint ("Compl.") (Dkt. 1) and the exhibits attached thereto:  (1) the Letter Agreement between Chanin and Vitro; (2) documents reflecting Duff & Phelps' merger with Chanin; and (3) the Settlement Agreement entered into between Vitro and holdout noteholders on March 1, 2013.  *See Leonard F. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citing *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

In addition, on a motion to dismiss under Rule 12(b)(1), a district court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Here, the parties have submitted multiple declarations with accompanying exhibits.  Vitro submitted:  (1) the Declaration of Jose Victor Rodriguez Barrera, Dkt. 19 ("Barrera Decl."); (2) the Declaration of Javier Arechavaleta Santos, Dkt. 16 ("Santos Decl."); (3) the Declaration of Matthew J. Latterner, with Exhibits A–P, Dkt. 17 ("Latterner Decl."); and (4) the Reply Declaration from Jose Barrera, Dkt. 25 ("Barrera Rep. Decl.").  Duff & Phelps submitted:  (1) the Declaration of Aaron B. Lauchheimer, with Exhibits A–G, Dkt. 22 ("Lauchheimer Decl."); and (2) the Declaration of Alfonso M. Lopez Melih, Dkt. 23 ("Melih Decl.").

Duff & Phelps' response to Vitro's motion to dismiss includes a motion to strike sections of the Santos Declaration.  *See* Dkt. 21 at 18–21.  Because the Court has denied Vitro's Motion to Dismiss, Duff & Phelps motion to strike is moot.  In the Background section of this opinion, the Court has drawn extensively from the Santos Declaration, but only with respect to facts that Duff & Phelps does not, or cannot, dispute.

three separate indentures:  (1) $300 million in 8.625% Senior Notes due 2012; (2) $225 million

in 11.75% Senior Notes due 2013; and (3) $700 million in 9.125% Senior Notes due 2017

(collectively the "Old Notes").  *Id.*  In February 2009, Vitro started restructuring negotiations

with an *ad hoc* committee of entities that beneficially held a majority of the outstanding principal

in the Old Notes ("Ad Hoc Group").  *Id.* ¶ 6.  To facilitate negotiations, Vitro agreed to pay the

fees and expenses of the Ad Hoc Group's legal counsel and financial advisor.  *Id.*  The Ad Hoc

Group's financial advisor was Chanin.  *Id.*

On July 17, 2009, Vitro executed a letter agreement with Chanin.  *Id.* ¶ 7; Compl. Ex. 1

("Letter Agreement").  Chanin agreed to provide financial advisory services to the Ad Hoc

Group, including the performance of due diligence concerning Vitro's business, capital structure,

and debt capacity.  Santos Decl. ¶ 7.  Vitro agreed to pay Chanin:  (1) a monthly retainer of

$250,000 during a three-month Initial Term and $100,000 during a one-month Extension Term;

(2) $175,000 per month if Chanin was retained by the Ad Hoc Group during the "Restructuring

Engagement"; and (3) reasonable, necessary, and documented out-of-pocket expenses.  Letter

Agreement ¶¶ 4(a), 5(a)(i), 6.  In addition, if Vitro entered into a "Transaction" during the

Restructuring Engagement (or "within 12 months from the effective termination . . . or expiration

of the Restructuring Engagement"), Vitro would pay Chanin a one-time, cash "Restructuring

Fee."  *Id.* ¶ 5(a)(ii).  The amount of this fee was to be the greater of $2.5 million or 1.0% of the

"cash, securities or other property actually received by the Noteholders, in the aggregate . . . if

the value of such cash and securities exceeds $375,000,000," provided, however, that the fee

could not exceed $5 million.  *Id.*  The Restructuring Fee would thus fall somewhere between

$2.5 million and $5 million.

Between August 2009 and July 2010, the Ad Hoc Group rejected three restructuring proposals made by Vitro.  Santos Decl. ¶ 8.  On October 18, 2010, Vitro learned that the Ad Hoc Group no longer held a majority of the Old Notes.  *Id.* ¶ 9.  In November 2010, "an impasse" was reached in the restructuring negotiations.  *Id.* ¶ 8.  By this time, the Ad Hoc Group included several new members who had purchased Old Notes in the secondary market.  *Id.* ¶ 10.  For reasons not relevant to this action, Vitro concluded that the Ad Hoc Group "had no intention of continuing to work together on a consensual restructuring plan."  *Id.* ¶ 12.  Vitro decided to cease payments to the Ad Hoc Group's legal counsel and to Chanin.  *Id.*  Up to that point, Vitro had paid Chanin $2.95 million in monthly fees and about $130,000 in expenses.  *See* Latterner Decl. Ex. C.

On November 1, 2010, Vitro publicly launched a joint tender and exchange offer to all holders of the Old Notes, which contemplated Vitro entering into a voluntary judicial reorganization (or "*concurso*") proceeding in Mexico following the expiration of these offers.  Santos Decl. ¶ 13.  A *concurso* in Mexico is governed by the *Ley de Concursos Mercantiles* ("LCM") (the "Mexican Business Reorganization Act").  *Id.* ¶ 14.

### B.    Vitro's Bankruptcy Proceedings in Mexico

On December 13, 2010, Vitro initiated a *concurso* proceeding in the Mexican District Court by filing a *concurso* petition (the "Mexican Bankruptcy Proceeding").  Santos Decl. ¶ 14.

On April 8, 2011, Vitro's *concurso* petition was granted, and Vitro was declared in *concurso* mercantile.  *Id.*  Upon being declared in *concurso* mercantile, Vitro was ordered to stop payment of all outstanding debts other than those necessary to carry on its business, and the Mexican District Court ordered the appointment of an independent *Conciliador* to oversee bankruptcy proceedings.  *Id.* ¶ 15.

4

Under the LCM, the *Conciliador* is responsible for compiling a list of creditors for the Mexican District Court, and for valuing and ranking each creditor's claim. *Id.* ¶ 16. On June 27, 2011, Chanin submitted its proof of claim to the *Conciliador*, requesting recognition of claims under the Letter Agreement. *Id.* ¶ 17; Latterner Decl. Ex. C ("Chanin Claim Recognition Application"); Laucheimer Decl. Ex. A (same). Chanin's claims, which totaled $3,291,965.01, consisted of: (1) unpaid monthly fees and expenses accrued between November 2010 and June 2011 of $1,266,965.01; and (2) a Restructuring Fee of $2,025,000. *See* Chanin Claim Recognition Application.

On or about August 5, 2011, the *Conciliador* submitted to the Mexican District Court his recommendation for which creditors should be recognized and how each claim should be valued and ranked. Santos Decl. ¶ 18; Laucheimer Decl. Ex. B ("*Counciliador* Claims Recognition Recommendation"); Latterner Decl. Ex. F (same). As to Chanin, **t**he *Conciliador* recommended that the amounts requested be recognized only up to April 8, 2011, the date when Vitro was declared in *concurso* mercantile. *See Counciliador* Claims Recognition Recommendation ("The claim may be only partially recognized as this proposal considers recognizing indebtedness accrued through April 8, 2011, which is the date in which the reorganization judgment was issued and which must be used to determine the amount of the indebtedness of the merchant."). Accordingly, the *Conciliador* recommended that the Mexican Bankruptcy Court recognize Chanin's claim for $869,733.81, or 2,224,938.56 UDI's.[2] *Id.*; Santos Decl. ¶ 18.

The *Conciliador* declined, however, to recognize Chanin's claim for a $2,025,000 Restructuring Fee. He explained:

---

[2] Under the LCM, the debts of a company (or individual) in *concurso* are first converted to Mexican pesos and then converted to UDI's (*Unidad de Inversion*)—an inflation-indexed measure of value published by Mexico's central bank. Santos Decl. ¶ 18 n.3.

> The amount claimed by [Chanin] of $2,025,000 cannot be granted as it is subject to a condition precedent consisting of the closing of a certain transaction as agreed in clause 5-a-(ii) of the Letter Agreement that was entered into by and between [Chanin], White & Case LLP and the merchant.
>
> Since such condition has not occurred as of the date the judgment was issued, thus no credit in favor of the creditor is susceptible of recognition.  However, should the condition agreed upon under the above-referred agreement occur and in the event payment of this claim by the creditor is appropriate, the latter [creditor] will have the right to claim its payment through the proceedings and terms that it deems appropriate

Claims Recognition Recommendation.[3]

A week later, on August 12, 2011, the Mexican District Court issued a ruling that adopted in full the *Conciliador*'s recommendations with respect to Chanin's claim against Vitro.  Santos Decl. ¶ 19; Latterner Decl. Ex. H ("Claims Recognition Ruling").  The ruling thus recognized Chanin's claim for 2,224,938.56 UDI's, the same amount contained in the *Conciliador*'s recommendation.  *See* Claims Recognition Ruling.  The Mexican District Court did not make any specific comment regarding Chanin's claim for the Restructuring Fee.  *Id.*  Chanin did not appeal this Ruling.  Santos Decl. ¶ 20.

---

[3] The Court has used the English translation of the *Conciliador*'s recommendation, provided by Duff & Phelps in Laucheimer Decl. Ex. B.  The translation provided by Vitro in Latterner Decl. Ex. F differs slightly:

> The amount claimed by [Chanin] for the amount of $2,025,000 is considered inadmissible since it is subject to a condition consisting on the closure of a certain operation, according to what is agreed in clause 5-a-ii of the Commitment Letter undersigned by [Chanin], White & Case, LLP, and the Party in Bankruptcy Procedure.
>
> Due to this condition there has been a noncompliance on the date when the ruling was made nor it is a credit generated in favor of the creditor subject to acknowledgement.  However, in case the condition agreed in the above mentioned agreement was generated, in case the payment of the amount claimed by the creditor proceeds, it can claim it according to the means and terms deemed proper.

In December 2011, the *Conciliador* submitted to the Mexican District Court a reorganization plan for Vitro, which had the support of recognized creditors holding 74.67% of the recognized claims.  Santos Decl. ¶ 22; Latterner Decl. Ex. O ("*Concurso* Plan").  The *Concurso* Plan provided for a distribution of new notes and cash (together, the "Restructuring Consideration") to recognized creditors, which was roughly equivalent to a return of 70 cents on the dollar on recognized claims.  Santos Decl. ¶ 22.  Again, the *Concurso* Plan did not expressly mention Chanin, or the Restructuring Fee that Chanin had previously sought in its submission to the *Conciliador*.  *See Concurso* Plan.

On February 3, 2012, the Mexican District Court issued an order approving the *Concurso* Plan.  Santos Decl. ¶ 23; Latterner Decl. Ex. L ("*Concurso* Approval Order").  In this order, Chanin was listed as an unsecured creditor with a claim for 2,224,938.56 UDI's, which, again, translated to $869,733.81—the same amount in the *Conciliador*'s recommendation.  *See Concurso* Approval Order at 13.  Chanin did not appeal this order.  Santos Decl. ¶ 23.

On February 23, 2012, Vitro consummated the *Concurso* Plan by issuing the Restructuring Consideration to third party payment trusts, which, in turn, were charged with delivering such consideration to Recognized Creditors.  Santos Decl. ¶ 24.  As of this date, Chanin has refused to acknowledge that the *Concurso* Plan settles its claims against Vitro.  *Id.* ¶ 25.  Accordingly, Chanin has not received the Restructuring Consideration to which it is entitled.  *Id.*

### C.    Settlement with U.S. Noteholders

After the *Concurso* Plan was approved, a group of noteholders in the United States refused to tender their notes or to receive their Restructuring Consideration.  Santos Decl. ¶ 27.  As a result, Vitro attempted to enforce the *Concurso* Plan against these noteholders by filing a

Chapter 15 suit in the Northern District of Texas ("Texas Bankruptcy Court").  Santos Decl.

¶ 28.  After the Mexican District Court approved the *Concurso* Plan on February 3, 2012, Vitro

filed a motion with the Texas Bankruptcy Court for an order giving full force and effect to the

*Concurso* Approval Order in the United States, and for a permanent injunction to prohibit

creditors from commencing or continuing actions to enforce claims against Vitro in the United

States.  *Id.* ¶ 29.

      The U.S. noteholders primarily objected to the *Concurso* Plan on the basis that it treated

Vitro's non-debtor subsidiaries as debtors within the *Concurso* proceeding, yet provided no

opportunity for the creditors of these subsidiaries to vote on whether to confirm the *Concurso*

Plan.  *See id.* ¶ 26; *In re Vitro, S.A.B. de C.V.*, 473 B.R. 117, 129 (Bankr. N.D. Tex. 2012)

*motion to certify appeal granted*, 11-33335-HDH-15, 2012 WL 2367161 (Bankr. N.D. Tex. June

21, 2012) and *aff'd*, 701 F.3d 1031 (5th Cir. 2012) *cert. dismissed*, 133 S. Ct. 1862 (2013).

Because these subsidiaries were not debtors within the Mexican *Concurso* proceeding, the U.S.

noteholders argued that these subsidiaries' guarantees were not properly extinguished in that

proceeding.  *See In re Vitro, S.A.B. de C.V.*, 473 B.R. at 131.

      On June 13, 2012, the Texas Bankruptcy Court, agreeing with the U.S. noteholders, held

that the discharge of non-debtor subsidiary obligations was not authorized under Chapter 15.  *See*

*In re Vitro, S.A.B. de C.V.*, 473 B.R. at 133 ("Accordingly, this Court concludes that the

*Concurso* plan approved in this instance, which extinguishes the guarantee claims of the [U.S.

noteholders] that were given under an indenture issued in the United States against non-debtor

entities that are subsidiaries of Vitro, should not be accorded comity to the extent it provides for

the extinguishment of the non-debtor guarantees of the indentures.  Such order manifestly

contravenes the public policy of the United States and is also precluded from enforcement under

§§ 1507, 1521 and 1522 of the Bankruptcy Code.").  Accordingly, the court denied Vitro's

Enforcement Motion.  *Id.*  On November 28, 2012, the Fifth Circuit affirmed, holding that the

Texas court did not abuse its discretion in determining that the *Concurso* Plan sought to

discharge non-debtor obligations, and in declining, on that basis, to enforce that Plan in the

United States.  *In re Vitro S.A.B. de C.V.*, 701 F. 3d 1031, 1059 (5th Cir. 2012) *cert. dismissed*,

133 S. Ct. 1862 (2013).

As a result, the non-debtor subsidiary obligations remained enforceable in the United

States.  Santos Decl. ¶ 30.  On March 1, 2013, to discharge these obligations, Vitro entered into a

global settlement with the U.S. noteholders who had refused to tender their notes.  *Id.* ¶ 31;

Compl. Ex. 3 ("Settlement").  As part of this settlement, the noteholders agreed to cease all

pending appeals and challenges to the bankruptcy proceeding in Mexico, and to dismiss with

prejudice all their enforcement actions in the United States.  *See* Settlement.  In return, they

received $852.50 for each $1,000 in principal amount for their notes—this settlement resulted in

a total payment of $729,215,000.  Settlement at § 2.1(d)(i); Compl. ¶¶ 35–36.  The Texas

Bankruptcy Court approved the settlement on March 14, 2013.  *See In re Vitro, S.A.B. de C.V.*,

Bankruptcy Petition No. 11-33335-hdh (Bankr. N.D. Tex.), Dkt. 547–49; Latterner Decl. Ex. M.

On April 12, 2013, Chanin sent Vitro an invoice, requesting payment of $3.25 million as

its Restructuring Fee, which it claimed to be owed based on the March 14, 2013 Settlement.

Compl. ¶ 43.  Vitro refused to pay the invoice.  *Id.* ¶ 44.

### D.    Procedural History of This Case

On May 14, 2013, Chanin's successor in interest, Duff & Phelps, filed the Complaint in

this case, alleging that Vitro's failure to pay Chanin the Restructuring Fee constituted breach of

contract and unjust enrichment.  Dkt. 1.  On July 1, 2013, the Court stayed the case due to the

pending Chapter 15 action.  Dkt. 11.  On August 23, 2013, the Court lifted its stay.  Dkt. 12.

On September 3, 2013, Vitro moved to dismiss the Complaint for lack of subject matter

jurisdiction under Rule 12(b)(1).  Dkt. 13.  Vitro also moved to dismiss Duff & Phelps' unjust

enrichment claim under Rule 12(b)(6).  *Id.*  With its motion, Vitro submitted a supporting

memorandum of law, Dkt. 14 ("Def. Br."), and three supporting declarations, Dkt. 15–17.  On

October 15, 2013, Duff & Phelps submitted a memorandum of law in opposition to Vitro's

motion to dismiss, Dkt. 21 ("Pl. Br."), and two supporting declarations, Dkt. 22–23.  On

November 5, 2013, Vitro submitted its reply brief, Dkt. 24 ("Def. Rep. Br."), and one supporting

declaration, Dkt. 25.  On December 5, 2013, the Court heard argument.  *See* Transcript of Oral

Argument ("Tr.").

## II.     Legal Standards

Once subject matter jurisdiction is challenged, "[a] plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction

exists."  *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova v. United

States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a motion to dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1), "the court must take all facts alleged in the complaint as

true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v.

Johnson*, 461 F.3d 164, 171 (2d Cir. 2006), but "jurisdiction must be shown affirmatively, and

that showing is not made by drawing from the pleadings inferences favorable to the party

asserting it."  *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also

APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL*,

671 F.3d 140, 145 (2d Cir. 2011).  In addition, on a motion to dismiss for lack of subject matter

jurisdiction, a district court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova*, 201 F.3d at 113.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, in considering a motion to dismiss, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[] all inferences in the plaintiff's favor.'"  *Brown v. Kay*, 889 F. Supp. 2d 468, 479 (S.D.N.Y. 2012) *aff'd*, 514 F. App'x 58 (2d Cir. 2013) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

## III.   Discussion

### A.      Vitro's 12(b)(1) Motion:  Principles of International Comity

Vitro asserts that the Restructuring Fee sought by Duff & Phelps in this case was "already the subject of and disallowed" in the Mexican Bankruptcy Proceeding, and therefore that the Court should, in the interest of international comity, "decline to exercise jurisdiction over" the Complaint.  Def. Br. at 15.  "The decision to grant comity is a matter within a court's discretion and the burden of proof to establish its appropriateness is on the moving party." *Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356 (CM), 2010 WL 2836134, at *10 (S.D.N.Y. July 9, 2010) *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011) (citing *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 75 (S.D.N.Y. 2007); *see also Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993).  Accordingly, Vitro bears the burden of proving that comity is appropriate in this case.

 "International comity has been described by the Supreme Court as 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own

citizens or of other persons who are under the protection of its laws.'" *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005) ("*JP Morgan*") (quoting *Hilton v. Guyot,* 159 U.S. 113, 164 (1895)).   The Second Circuit has "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings."  *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999); *see also JP Morgan*, 412 F.3d at 424 ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.").  Because the "equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding, American courts regularly defer to such actions."  *Finanz AG*, 192 F.3d at 246 (*quoting Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987)); *Allstate Life Ins.*, 994 F.2d at 999 ("[W]e have recognized that comity is particularly appropriate where, as here, the court is confronted with foreign bankruptcy proceedings.").  In general, this Court will afford comity to a foreign bankruptcy proceeding, so long as that proceeding "abides by fundamental standards of procedural fairness" and does not "violate the laws or public policy of the United States."  *Finanz AG*, 192 F.3d at 246 (citations omitted).[4]

Duff & Phelps does not oppose Vitro's motion to dismiss on the grounds either that the Mexican Bankruptcy Proceeding was procedurally unfair to Chanin, or that heeding its outcome

---

[4] Duff & Phelps asserts that "the decision of whether or not to grant comity to a foreign court's ruling is to be analyzed under applicable state law."  Pl. Br. at 17 (citing *Maersk*, 2010 WL 2836134).  However, in *Maersk*, the court also noted that a federal court's "subject-matter jurisdiction is [a] federal question," and that "[i]n cases involving federal questions, federal courts generally apply federal law to determine whether to recognize a foreign country judgment."  *Maersk*, 2010 WL 2836134, at *9–*10 (citations omitted).   In any event, "New York and federal comity law share many of the same fundamental principles for recognizing foreign judgments."  *Id.* at *10 (citing *Johnston v. Compagnie Generale Transatlantique*, 242 N.Y. 381 (1926)).  Here, the dispute is academic.  Because the Court has determined that Vitro's Mexican Bankruptcy Proceeding did not discharge the Restructuring Fee at issue, *see infra*, the Court need not decide whether to apply federal or New York state principles as to comity.

would violate U.S. law or public policy.  *See* Pl. Br. 10.  Rather, Duff & Phelps' primary

argument is that, as a factual matter, the Restructuring Fee at issue was not discharged in that

proceeding.  *See id.* ("Comity is inappropriate in this case, because the Claims Recognition

Ruling and the *Concurso* Approval Order did not disallow the Restructuring Fee.").  Therefore,

Vitro's motion to dismiss on the basis of comity turns on whether the Restructuring Fee at issue

was or was not discharged in Vitro's Mexican Bankruptcy Proceeding.

> **B.     Vitro's 12(b)(1) Motion:  The Mexican Bankruptcy Proceeding**

There are three main disputes concerning Vitro's Mexican Bankruptcy Proceeding that

bear on Vitro's motion to dismiss:  (1) whether Chanin submitted its claim for the Restructuring

Fee to the *Conciliador*; (2) whether the LCM permits a Mexican Bankruptcy Proceeding to

discharge contingent liabilities; and (3) most centrally, whether Vitro's Mexican Bankruptcy

Proceeding, as a factual matter, discharged the contingent liability at issue—namely, the

Restructuring Fee.

> **1.     Chanin Submitted its Claim for the "Restructuring Fee"**

As a threshold matter, the parties dispute whether Chanin submitted a claim for the

Restructuring Fee to the *Counciliador*.  Duff & Phelps asserts that Chanin's claim did not

include the Restructuring Fee, *see* Pl. Br. at 20, whereas Vitro asserts that Chanin's claim did

include the Restructuring Fee, *see* Def. Rep. Br. at 4.

As to this point, the materials submitted to this Court compellingly favor Vitro.  On June

27, 2011, Chanin submitted its claim to the *Conciliador* in Vitro's bankruptcy.  *See* Latterner

Decl. Ex. C ("Chanin Claim Recognition Application").  Chanin listed two claims under the

section titled "Claim against the Marketer," one for $1,266,965.01, the other for $2,025,000.  *Id.*

Chanin's submission also contained an "Annex," which explained these claims in more detail.

*Id.*  In the first section of the "Annex," also titled "Claim Against the Marketer," Chanin stated that the $1,266,965.01 it sought was "for pending expenses and fees," and that the $2,025,000 it sought was "for closing a transaction (according to [how] this term . . . was defined in section 3 of the agreement)."  *Id.*  This submission reveals that Chanin included in its claim to the *Conciliador* the Restructuring Fee at issue in this case.

Duff & Phelps' counter-argument is that Chanin's final summary of the claim, in paragraph six of the "Annex," made its claim for the Restructuring Fee contingent on future events, such that Chanin only intended to pursue the Restructuring Fee within its claim if events that developed later gave it a contractual right to such a fee.  Specifically, Chanin's final summary states:  "[Vitro] currently owes for fees and expenses to [Chanin] the amount of $1,266,965.01 . . . and if an Operation [or a Transaction] closes, [Vitro] will owe [Chanin] an additional amount of $2,025,000."  *Id.* ¶ 6.  However, this linguistic formulation at one point in Chanin's submission is insufficient to overcome Chanin's explicit statements that it was pursuing, in that proceeding, the $2,025,000, and that this sum represented a Restructuring Fee. That Chanin included the $2,025,000 claim in its formal list of claims against Vitro, and that Chanin defined this claim as payment for "closing a transaction," convincingly shows that Chanin's intent was to include, within the Mexican Bankruptcy Proceeding, a claim against Vitro for the Restructuring Fee at issue in this case.  Notably, the *Conciliador*, although ultimately declining to recognize the Restructuring Fee on the grounds that Chanin's entitlement turned on future  events, clearly understood Chanin to be seeking that fee in the Mexican Bankruptcy Proceedings, and Chanin, for its part, did nothing to disabuse the *Conciliador* of that understanding.

### 2.    A Mexican Bankruptcy Proceeding May Discharge Contingent Liabilities.

The parties also dispute whether the LCM allows for the discharge of contingent claims or executory contracts.  Duff & Phelps asserts that, as a matter of Mexican law, it was impossible for the Restructuring Fee to be discharged in bankruptcy, because the LCM only permits the Mexican District Court to resolve claims that "exist" as of the *concurso* ruling.  Pl. Br. at 14–15. Vitro counters that the LCM, like the U.S. Bankruptcy Code, contemplates resolving a debtor's contingent liabilities and executory contracts.  Def. Rep. Br. at 3–4.

Again, as to this point, the Court holds in favor of Vitro.  U.S. Bankruptcy Courts and trustees, of course, routinely recognize and discharge the contingent liabilities of bankrupt debtors.  *See In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991) ("[A]ll legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.") (citation omitted); *Route 21 Associates of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 82 (S.D.N.Y. 2012), *aff'd sub nom.*, *In re Lyondell Chem. Co.*, 13-230-BK, 2013 WL 5733196 (2d Cir. Oct. 23, 2013) (it is well established that the U.S. Bankruptcy Code allows trustees to "reject any executory contract"); *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 998–99 (2d Cir. 1996) (an executory contract is generally one in which "performance remains due to some extent on both sides").  After reviewing the helpful declarations from the expert witnesses on both sides, the Court concludes that the LCM similarly allows a Mexican District Court to discharge contingent claims and executory contracts in the course of a Mexican bankruptcy proceeding.

In making this ruling, the Court relies primarily on the Reply Declaration of Jose Victor Rodriguez Barrera, Vitro's expert witness on Mexican Law.  *See* Barrera Rep. Decl.  According to Barrera:

> Article 88, Section II of the LCM specifically addresses treatment of contingent liabilities, providing that, with respect to any claims subject to a condition precedent that had not occurred at the date that the debtor was declared in *concurso*, those claims will be treated as if the conditions precedent had not occurred.
>
> This provision of the LCM makes clear that the Mexican District Court has the jurisdiction to reorganize and/or discharge contingent liabilities.  The fact that no "Transaction" (as that term is defined in the Letter Agreement) had occurred as of the date of the *Concurso* Ruling merely rendered Plaintiff's claim for a [Restructuring Fee] contingent, not non-existent.

Barrera Rep. Decl. ¶¶ 5–7.  The text of Article 88 strongly supports Barrera's interpretation of that law:

> In order to determine the amount of any credits payable by the Merchant, as from the date on which a judgment is issued to declare the business reorganization:
> I.   The Merchant's outstanding obligations shall be deemed due.
> II.  *Any credits subject to a suspensive condition [condicion suspensiva], the condition shall be regarded as not having taken place*.

Latterner Decl. Ex. D at 24 (emphasis added).  According to Article 88, then, contingent claims are capable of recognition; in fact, the court is instructed to regard "[a]ny credits subject to a suspensive condition [*i.e.*, a condition precedent]," as having not taken place when determining the amount of credits "payable by the Merchant."  *Id.*

Notably, Duff & Phelps' expert witness, Alfonso Lopez Melih, does not point to any provision of the LCM that contradicts the plain meaning of Article 88.  According to Melih:

> Pursuant to articles 130 and 132 of the LCM, claims from Merchant's creditors are subject to judicial recognition. . . . If credits do not exist at the moment of the rendering of the *concurso* ruling, the *conciliador* cannot request or propose their recognition to the court.  Accordingly, credits are only to be recognized if they exist by or before the declaration of Merchant's *concurso*.

Melih Decl. ¶ 33.  However, articles 130 and 132 do not support Melih's apparent argument that a credit cannot be contingent.  Both Article 130 and 132 speak in terms of "credits" that creditors can claim against a debtor's assets, but neither Article states that contingent credits may never be

16

recognized or discharged.  Latterner Decl. Ex. D at 35–36.  Duff & Phelps thus fails to identify

any provision of the LCM that would have precluded the *Conciliador* or Mexican District Court

from discharging contingent claims (such as the Restructuring Fee) during Vitro's Mexican

Bankruptcy Proceeding, had they chosen to do so.

The Court therefore holds that the LCM, Article 88, permitted the *Conciliador* and

Mexican District Court to discharge the Restructuring Fee at issue in this case.

### 3.      Vitro has Failed to Establish that its Mexican Bankruptcy Proceeding Discharged the Restructuring Fee.

This case therefore turns on a factual dispute—did the *Conciliador* and Mexican District

Court, in the course of Vitro's Mexican Bankruptcy Proceeding, discharge the Restructuring Fee

at issue?  If so, Vitro's motion to dismiss should be granted.

As to this issue, the evidence submitted to the Court on Vitro's Rule 12(b)(1) motion

favors Duff & Phelps.  Although the intentions of the Mexican District Court as to this point are

not perfectly pellucid, such evidence as has been presented to the Court does not permit a ruling

in favor of Vitro, whose burden it is to prove that the Mexican District Court intended to

discharge the Restructuring Fee.  Instead, on balance, the evidence presented strongly favors

Duff & Phelps' claim that Chanin's right to pursue that fee at a later date was left intact.

In so holding, the Court places significant weight on the *Conciliador*'s "Claims

Recognition Recommendation," which was submitted to the Mexican District Court on August 5,

2011.  *See* Laucheimer Decl. Ex. B.  As to Chanin, the *Conciliador* recommended that the

Mexican District Court recognize a claim for only $869,733.81—not the $3,291,965.01 that

Chanin requested.  *Id.*  For each of his recommendations, the *Conciliador* provided "reasons and

causes supporting the proposal for final recognition of credits."  *Id.*  As to his recommendation

concerning Chanin, the *Conciliador* stated:

> The claim may be only partially recognized as this proposal considers recognizing indebtedness accrued through April 8, 2011, which is the date in which the reorganization judgment was issued and which must be used to determine the amount of the indebtedness of the merchant.
>
> The amount claimed by [Chanin] of $2,025,000 cannot be granted *as it is subject to a condition precedent* consisting of the closing of a certain transaction as agreed in clause 5-a-(ii) of the Letter Agreement that was entered into by and between [Chanin], White & Case LLP and the merchant.
>
> Since such condition has not occurred as of the date the judgment was issued, thus no credit in favor of the creditor is susceptible of recognition. However, *should the condition agreed upon under the above-referred agreement occur and in the event payment of this claim by the creditor is appropriate, the latter [creditor] will have the right to claim its payment through the proceedings and terms that it deems appropriate*.

Laucheimer Decl. Ex. B (emphases added).

The most convincing meaning of the *Conciliador*'s explanation is that (1) he would not, *at that time*, recognize Chanin's contingent claim for a Restructuring Fee, *but* that (2) he would not foreclose Chanin's future right to pursue payment of the Restructuring Fee, if and when the "condition precedent" in the contract occurred. *Id.* The *Conciliador*'s explanation is not plausibly read, in Vitro's favor, to recommend that Chanin's claim to the Restructuring Fee be discharged in its entirety. Rather, the *Conciliador* appears to have recommended keeping open Chanin's right to claim payment of the Restructuring Fee at a later date, "should the above-referred agreement occur," and if Vitro's payment of the claim became appropriate. *Id.* The *Conciliador*'s statement that Chanin should have the "right to claim its payment through proceedings" that it deemed appropriate appears to contemplate proceedings such as the present litigation in this Court. Put differently, rather than having recommended the discharge of Vitro's contingent liability, the *Conciliador* appears to have recommended that the ability to pursue such a claim be allowed to survive the Mexican Bankruptcy Proceeding.

The Mexican District Court then issued a ruling, in which, significant here, it adopted the *Conciliador*'s recommendation as to Chanin in full.  *See* Latterner Decl. Ex. H ("Claims Recognition Ruling").  Consistent with that course, the Mexican District Court recognized Chanin's claim for the exact amount that the *Conciliador* had recommended (*i.e.*, $869,733.81, or 2,224,938.56 UDI's).  A reasonable inference is that the Mexican District Court also accepted the *Conciliador*'s recommendation to preserve, for the future, Chanin's ability to pursue the Restructuring Fee.  To be sure, the Mexican District Court did not expressly mention Chanin's Restructuring Fee, and it is therefore conceivable, albeit quite unlikely, that that Court *sub silentio* intended, as an exercise of its power to discharge contingent liabilities, to discharge Chanin's right to pursue a Restructuring Fee.  The Court's wholesale adoption of the *Conciliador*'s recommendation, however, strongly suggests otherwise.[5]

---

[5] Vitro also argues, without citing any provision in the LCM, that "the *Concurso* Plan provides for the cancellation of all pending contracts to which Vitro was party and a discharge of all of Vitro's obligations under such contracts."  Def. Rep. Br. at 7–8.  For this sweeping proposition, Vitro cites only its expert on Mexican Law, Barrera, who in turn, relies only on Chapter Nine of the *Concurso* Plan.  *See* Barrera Decl. ¶ 21.  Chapter Nine states, *inter alia*, that the payment of the restructuring fees and instruments agreed to in the *Concurso* Plan will:

> [S]ubstitute, replace and terminate the above obligations, instruments, securities, agreements and warranties in which were agreed upon Approved Credits and, therefore, . . . will terminate personal guarantees granted a third and/or direct and indirect subsidiaries of Vitro with regards to the obligations, instruments, securities and agreements that gave rise to the Approved Credits.

Latterner Decl. Ex. O at 19.  According to Vitro, this clause means that *all* contracts between Vitro and its creditors were discharged.  Def. Rep. Br. at 7–8; Tr. at 8–11, 24–26.  But the clause does not actually state that it cancels "all contracts"; rather, it states that it replaces "the above obligations, instruments, securities, agreements and warranties" with new instruments. Therefore, read in context, the clause appears to be concerned not with discharging pending contracts, but with ensuring that new debt instruments issued as part of the *Concurso* plan replace Vitro's old debt instruments.  Absent text that reliably reveals an intent to extinguish Chanin's right to pursue a Restructuring Fee, the Court declines to adopt Vitro's reading of this single clause as cancelling those of Vitro's contractual obligations that appear to have been

The Court, therefore, denies Vitro's motion to dismiss pursuant to Rule 12(b)(1).  The basis for that motion is the assertion that the Mexican District Court's ruling in its bankruptcy proceeding intended to discharge Chanin's claim to a Restructuring Fee, but Vitro has failed to establish any such discharge.  As a result, there is no inconsistency between Duff & Phelps' pursuit of that fee in this lawsuit and the earlier decision of a foreign tribunal, and principles of international comity therefore do not require dismissal of this case.

All that said, the Court is mindful that the Mexican District Court did not address *in haec verba* the Restructuring Fee, and that this Court's ability to discern the unexpressed intentions of that foreign tribunal may be imperfect.  It would be unfortunate, and a waste of the parties' time and money, if—after potentially extensive and expensive discovery proceedings had commenced—conclusive evidence were to come to light that, in fact, the Mexican District Court had intended all along to extinguish Chanin's right to pursue such a fee.

The Court, accordingly, will stay the onset of discovery in this case for three months. During this three-month period, the parties may seek clarification from the Mexican District Court as to its intentions with regard to Chanin's claim to a Restructuring Fee.  Should such clarification be pursued, the Court expects the parties to approach the Mexican District Court jointly, rather than unilaterally, lest a pronouncement by that Court following a unilateral approach be later challenged as based on a skewed presentation of the relevant background, facts, or law.  The Court expects the parties to present the relevant issue to that Court in a neutral manner, presumably with this decision attached as a guide to the Mexican District Court as to the issue on which this Court would welcome clarification.

---

explicitly preserved by the *Conciliador*'s recommendation and the Mexican District Court's subsequent Claims Recognition Ruling.

In the event of a pronouncement by the Mexican District Court clarifying that it intended to extinguish such a claim, Vitro may then renew its motion to dismiss pursuant to Rule 12(b)(1).[6]  If, however, no such pronouncement has issued by April 22, 2014, discovery in this case will then commence.  The parties are directed, by April 1, 2014, to submit a proposed case management plan and discovery schedule, consistent with the Court's Individual Rules, under which (barring clarification by the Mexican District Court) discovery is to commence on April 23, 2014.

### C.      Vitro's 12(b)(6) Motion

Separately, Vitro moves to dismiss Duff & Phelps' claim for unjust enrichment under Rule 12(b)(6).  According to Vitro, Duff & Phelps' claim for unjust enrichment is "duplicative of its breach of contract claim and must be dismissed under Fed. R. Civ. P. 12(b)(6)."  Def. Br. at 25.  Under New York law, however, a claim for unjust enrichment is not precluded by a breach of contract claim when the parties dispute the existence of the contract.  *See Curtis Props. Corp. v. Greif Cos.*, 653 N.Y.S.2d 569, 571 (1st Dep't 1997) ("[A] party is not precluded from proceeding on both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue.") (citing *Joseph Sternberg Inc. v. Walber 36th St. Assoc.*, 594 N.Y.S.2d 144 (1st Dep't 1993)).  Here, as discussed in detail above, the parties dispute whether the contractual clause at issue was discharged during Vitro's Mexican Bankruptcy Proceeding.  The Court also notes that

---

[6] To be clear, in permitting such a motion based on a new pronouncement from the Mexican District Court, the Court does not invite Vitro to challenge, whether through new expert declarations or new briefing or otherwise, the Court's decision on the present record.  The three-month stay is intended solely to enable the parties to seek clarification from the Mexican District Court.

because the contract and unjust enrichment claims derive from the same underlying conduct, retaining both claims in the case will not expand the scope of eventual discovery.

Accordingly, Vitro's Rule 12(b)(6) motion is also denied without prejudice.

## CONCLUSION

For the foregoing reasons, Vitro's motion to dismiss is denied.  Discovery in this case is stayed until April 22, 2014, for the limited purpose of enabling the parties jointly to seek clarification from the Mexican District Court as to whether it intended to extinguish Chanin's claim to a Restructuring Fee

The Clerk of Court is directed to terminate the motion pending at docket number 13.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 21, 2014
      New York, New York